HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JTS, INC., et al.,

          Plaintiffs,

      v.

CITY OF SEATTLE, et al.,

          Defendants.

CASE NO. C13-663RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on two motions to dismiss: one from the City of Seattle and Seattle City Light (collectively "the City"), and one from Local 77 of the International Brotherhood of Electrical Workers ("the Union").  Only the City has requested oral argument.  The court finds oral argument unnecessary.  For the reasons stated herein, the court GRANTS both motions (Dkt. ## 4, 6), DISMISSES Plaintiffs' claims against the City with prejudice, and dismisses Plaintiffs' claims against the Union with leave to amend.  Plaintiffs must file an amended complaint in accordance with this order no later than November 18, 2013, or the court will dismiss this action without further notice.

## II.  BACKGROUND

JTS, Inc., and its two owners, Kristi and Joaquin Quezada (collectively "JTS") have a contract to clear City electric power cables of obstructions.  There are at least two

ORDER – 1

other companies who have similar contracts with the City. The JTS contract provides a detailed set of work specifications and payment provisions, but it does not guarantee that the City will use JTS's services. The contract makes this explicit by announcing that the City "does not guarantee utilization of this contract."

Until January 2012, JTS employed only Union members. That changed, it appears, because JTS was unable to make required contributions to one or more Union funds. It attempted to negotiate a resolution with the Union, but had no success. Some of JTS's employees left and went to work for its competitors. JTS contends that the Union pressured those employees to leave JTS.

When JTS began to use non-Union labor, it contends that its prospects for work from the City took a dramatic downturn. Its complaint alleges that the Union pressured the City to stop giving work to JTS, and that the City responded by reducing the amount of work it called on JTS to perform. JTS alleges that at least two City employees told JTS that it would get no work from the City because it was not a Union shop. JTS is struggling financially as a result.

JTS sued in King County Superior Court. It claimed that the Union tortiously interfered with JTS's contract with the City, that it committed trade libel by making unspecified false statements about JTS, and that those same unspecified statements violate Washington's Consumer Protection Act (RCW Ch. 19.86, "CPA"). It alleged that the City breached the contract as well as what the complaint refers to as the City's "Competitive Bidding and Purchasing Requirements." That allegation incorporates an allegation of discrimination, in particular that the City discriminated against JTS (which is minority-owned) on the basis of its Union affiliation.

After the Union removed the case from state court to this court, the Union and the City each promptly filed a motion to dismiss. The City argues that the complaint states no claim against it because even accepting JTS's version of events, the City did not

ORDER – 2

breach a contract, breach its competitive bidding requirements, or discriminate.  The Union argues that the Labor and Management Relations Act (29 U.S.C. §§ 141-197, "LMRA") preempts each of JTS's claims against it, and that JTS inadequately pleaded those claims in any event.

### III.   ANALYSIS

**A.     The Court Has Subject Matter Jurisdiction.**

The court begins by inquiring into its jurisdiction to hear this case.  No party has challenged the court's subject matter jurisdiction, but the court has an independent obligation to ensure that it has the power to resolve a dispute.  *See Mashiri v. Dep't of Educ.*, 724 F.3d 1028, 1031 (9th Cir. 2013) ("Subject matter jurisdiction can never be forfeited or waived, and federal courts have a continuing, independent obligation to determine whether subject matter jurisdiction exists."); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (courts must examine subject matter jurisdiction "even in the absence of a challenge from any party").

JTS sued in state court relying solely on state law.  JTS and the City plainly have Washington domiciles, and there is no suggestion that the Union (more specifically, one of its Washington locals) is not domiciled in Washington.  On its face, JTS's complaint suggests no basis for either federal question jurisdiction (28 U.S.C. § 1331) or diversity jurisdiction (28 U.S.C. § 1332).  The Union removed it to this court nonetheless.  It was permitted to do so only if JTS stated a claim over which this court would have had jurisdiction if JTS had sued here.  28 U.S.C. § 1441(a).

The complete preemption doctrine is an exception to the general rule that a claim is one "arising under" federal law only when a plaintiff's "well-pleaded complaint" raises issues of federal law.  *Miles v. Okun (In re Miles)*, 430 F.3d 1083, 1088 (9th Cir. 2005).  Some federal statutes carry such preemptive force that they completely preempt an area of state law.  *Id.*  A defendant may remove a state-law claim that falls within the scope of

ORDER – 3

1    a statute that is completely preemptive, just as if the plaintiff had stated a federal cause of

2    action.  *Id.*  The Supreme Court has recognized only three statues as completely

3    preemptive: section 502 of the Employee Retirement Income Security Act of 1974

4    ("ERISA"), sections 85 and 86 of the National Bank Act, and (of particular interest in

5    this case) section 301 of the LMRA.  *Miles*, 430 F.3d at 1088.  Although relatively many

6    federal statutes preempt state law, very few are carry the preemptive force to not merely

7    displace state law, but to permit removal of ostensibly state-law claims.  Federal law

8    typically displaces state law via "conflict preemption," but conflict preemption confers no

9    right to removal.  *See*, *e.g.*, *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581

10   F.3d 941, 945 (9th Cir. 2009) (distinguishing conflict preemption from complete

11   preemption, noting that complete preemption "is really a jurisdictional rather than a

12   preemption doctrine, as it confers exclusive federal jurisdiction in certain instances where

13   Congress intended the scope of a federal law to be so broad as to entirely replace any

14   state-law claim") (internal quotation and alteration omitted).

15          No one suggests that JTS's suit falls within the scope of LMRA section 301,

16   which governs disputes over collective bargaining agreements and other contracts

17   between labor and management.  *See* 29 U.S.C. § 185.  Section 303 of the LMRA,

18   however, creates a cause of action for damages arising from a violation of section 8(b)(4)

19   of the National Labor Relations Act ("NLRA").  *See* 29 U.S.C. § 187(a) (citing 29 U.S.C.

20   § 158(b)(4)); 29 U.S.C. § 187(b) (permitting anyone "injured in his business or property

21   by reason o[f] any violation of subsection (a)" to sue in federal district court).

22   Section 8(b)(4) of the NLRA, in turn, is commonly referred to as that Act's "secondary

23   boycott" provision.  *Ahearn v. Int'l Longshore & Warehouse Union, Locals 21 & 4*, 721

24   F.3d 1122, 1128 (9th Cir. 2013).  It prohibits union conduct whose object is to force an

25   employer with whom the union has no dispute to stop doing business with an employer

26   with whom the union has a dispute.  *Id.*

27   ORDER – 4

28

JTS's claims against the Union arise from conduct within the scope of section 8(b)(4) and thus within the preemptive scope of section 303.  The complaint describes the City's changes to the amount of work it has allocated to JTS, how it pays JTS, and how it favors JTS's competitors.  It then alleges that these actions are "a result of union pressure put on City Light to make life for JTS as difficult as possible and to eliminate JTS as a viable competitor."  Compl. ¶ 47.  JTS contends that the Union's "act[s] of intimidation" interfered with JTS's contract with the City, ¶ 52, and that the Union violated the CPA by putting "pressure . . . on City Light personnel to discriminate against JTS for being a non-union business enterprise," ¶ 63.  These allegations fall squarely within section 8(b)(4)'s prohibition on threats or coercion with the object of forcing a business to "cease doing business with any other person . . . ."  29 U.S.C. § 158(b)(4)(ii)(B).  JTS's trade libel claim likely falls within the scope of section 8(b)(4) as well, because it claims business injuries as a result of the Union's statements to the City.

There is no question that section 303 displaces, via conflict preemption, state law remedies; it remains to decide whether section 303 is completely preemptive.  That section 303 is conflict preemptive is settled law.  *San Antonio Cmty. Hosp. v. S. Cal. Dist. Council of Carpenters*, 125 F.3d 1230, 1235 (9th Cir. 1997) (holding that section 303(b), which does not permit injunctive relief, displaces state law tortious interference law that would permit an injunction); *see also Local 20, Teamsters Union v. Morton*, 377 U.S. 252, 259-60 (1964) (holding that section 303 displaces conflicting state remedies).  No Ninth Circuit or Supreme Court authority of which the court is aware holds that section 303 is completely preemptive.  The Seventh Circuit has held that section 303(b) "*completely* preempts state-law claims related to secondary boycott activities described in section 158(b)(4) . . . ."  *Smart v. Local 702 IBEW*, 562 F.3d 798, 808 (7th Cir. 2009) (emphasis in original).  Two of this District's judges have found *Smart* persuasive.  One held that section 303 completely preempts Washington tortious interference claims based

ORDER – 5

on conduct within the scope of section 8(b)(4), albeit in a case that began in federal court. *Point Ruston, LLC v. Pac. Nw. Reg'l Council of Carpenters*, 658 F. Supp. 2d 1266, 1277 (W.D. Wash. 2009) (Settle, J.).  The other held that a union properly removed a case in which a state court had imposed an injunction against union members picketing a sorority house being repaired by a drywall contractor with whom the union had a dispute.  *Alpha Theta of Alpha Delta Pi Bldg. Ass'n v. Pac. Nw. Reg'l Council of Carpenters*, No. C09-1306RSL, 2009 U.S. Dist. LEXIS 92407, at *6-9 (W.D. Wash. Sept. 23, 2009) (Lasnik, J.).  Some district courts, including some within the Ninth Circuit, have reached the opposite conclusion.  *See*, *e.g.*, *Sutter Health v. UNITE HERE*, No. 2:05-cv-1081 MCE-PAN, 2005 U.S. Dist. LEXIS 20892, at *12-19 (E.D. Cal. Aug. 10, 2005); *Cmty. Reg'l Med. Ctr. v. Carpenters Union, Local 701*, No. 1:08-cv-1347 AWI GSA, 2008 U.S. Dist. LEXIS 118293, at *9 n.1 (E.D. Cal. Oct. 30, 2008) (report and recommendation), *adopted by*, 2008 U.S. Dist. LEXIS 93541 (E.D. Cal. Nov. 18, 2008); *Offices at 2525 McKinnon, LLC v. Ornelas*, 681 F. Supp. 2d 778, 785 (N.D. Tex. 2010)

The reasoning in *Smart* persuades the court that the Ninth Circuit would also hold that section 303 is completely preemptive.  The Ninth Circuit recognizes, in accordance with Supreme Court authority, that section 301 of the LMRA is completely preemptive. *Miles*, 430 F.3d at 1089 (citing *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 560 (1968)).  The *Smart* court observed that section 303 of the LMRA expressly incorporates the "limitations and provisions of" section 301, including section 301's provisions for determining venue, serving process, and the like.  562 F.3d at 807-808 & n.9.  It further observed that "Congress' interests in uniform treatment of labor-management relations are equally at stake in both" sections 301 and 303.  *Id.* at 808.  Those observations compelled its holding that section 303 is completely preemptive.  *Id.*  For the reasons the *Smart* court articulated, and because this

ORDER – 6

court finds no indication that the Ninth Circuit would reach a different conclusion, the court holds that section 303 is completely preemptive.

Because JTS has raised state law claims within the scope of section 303, which is completely preemptive, the Union had the right to remove this case, and this court has subject matter jurisdiction. No one has asked the court to decline to exercise supplemental jurisdiction over JTS's claims outside the scope of section 303. *See* 28 U.S.C. § 1367(c). The court finds no reason to decline supplemental jurisdiction.

## B. Motions to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a motion to dismiss for failure to state a claim on which the court can grant relief. *Harris v. County of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012). Rule 12(b)(6) requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from its allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). The court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). The court may also consider evidence subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

ORDER – 7

JTS insists that Washington pleading standards, not the standards announced in *Twombly*, *Iqbal*, and their progeny, govern his complaint. He correctly observes that the Washington Supreme Court has declined to incorporate *Twombly* and similar precedent into Washington's pleading rules. *McCurry v. Chevy Chase Bank, FSB*, 233 P.3d 861, 863 (Wash. 2010). The Ninth Circuit, however, has never applied state pleading rules to federal court pleadings, even in complaints invoking state law. *See*, *e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (noting that the Federal Rules of Civil Procedure apply in federal court regardless of the source of subject matter jurisdiction); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102-03 (9th Cir. 2003) (concluding, after considering *Erie* doctrine, that the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply to state-law causes of action in federal court). JTS is not at fault for drafting its complaint with Washington pleading standards in mind, but it must at a minimum amend its complaint post-removal to meet federal standards.

### 1. JTS's Claims Against the City

Whether under federal pleading standards or Washington standards, JTS has stated no claim against the City. Its breach of contract claim fails for the simple reason that the contract is not a guarantee that the City will give JTS work, it is merely an agreement regarding compensation and expectations in the event that the City gives JTS work. JTS did not attach the contract to its complaint, but it cannot dispute that the contract is central to its claims, and it does not dispute that the version that the City provided is authentic. That contract expressly provides that it is not a promise to give JTS work. JTS alleges no breach other than the City's change in the amount of work it allocates. Although JTS requests leave to amend, nothing in either its complaint or its response to the City's motion to dismiss suggests it could plead a viable breach of contract claim.

JTS's breach of implied duty claim fails because JTS has not cited any authority in support of an implied duty to give JTS work. In any event, Washington does not imply

ORDER – 8

contractual duties that are contrary to a contract's express terms.  *See*, *e.g.*, *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991) (noting that implied duty of good faith and fair dealing does not inject substantive terms into a contract).

JTS's claim for breach of the City's competitive bidding and purchasing requirements fails for the simple reason that JTS has failed to specify what those requirements are, or how they apply to JTS.  Even in response to the City's motion to dismiss, JTS does not suggest it has a valid basis for this claim.

The court cannot be sure what JTS means when it appends the term "discrimination" to its cause of action based on the City's competitive bidding requirements.  JTS notes that it is a minority-owned business, but it does not suggest that the City did anything with either the purpose of discriminating on that basis or with the effect of discriminating on that basis.  It does not allege, for example, that the City has diverted work toward other contractors because the other contractors are not minority-owned.  Indeed, it alleges nothing about the ownership of the contractors at issue.  JTS appears to assert that the City discriminated against it because JTS stopped using union labor, but the court is aware of no law that prohibits discrimination on that basis.  JTS cites no authority in support of its discrimination claim.[1]

### 2.    JTS's Claims Against the Union

JTS must, at a minimum, replead its claims against the Union.  As the court has already noted, every claim based on conduct within the scope of section 303 of the LMRA is preempted.  That does not mean that JTS cannot state a claim, but it means that it must replead those claims as section 303 claims.  *See*, *e.g.*, *Scott v. Gulf Oil Co.*, 754 F.2d 1499, 1506 (9th Cir. 1985) (permitting plaintiff to replead completely preempted claims as ERISA violations).  JTS may have one or more claims based on conduct

---

[1] The City asserts, at pages 10-11 of its motion to dismiss, that the government is entitled to deference with respect to allegations of discrimination in contracting.  The court's disposition today does not require it to reach this argument, and no one should read this order to suggest agreement with the City's position.

ORDER – 9

outside the scope of section 303, but its complaint lacks any detail that would permit the court (or the Union) to reach any conclusions.  Its trade libel claim, for example, is inadequate to place the Union on notice of what statements it (or its agents) made that were libelous.  That claim, like JTS's other claims against the Union, relies on allegations so vague that it is difficult for the court (and the Union) to ascertain what Union conduct is in question.  If JTS chooses to amend its complaint, it must substantially clarify its allegations.

## IV.  CONCLUSION

For the reasons previously stated, the court GRANTS the City's motion to dismiss. Dkt. # 4.  The court dismisses JTS's claims against the City with prejudice.  Although Plaintiff has requested leave to amend, JTS has given the court no reason to believe it could state a claim against the City.

The court GRANTS the Union's motion to dismiss as well.  Dkt. # 6.  The court dismisses JTS's claims against the union without prejudice, and will permit JTS to file an amended complaint that states a claim or claims arising under section 303 of the LMRA and, if appropriate, a claim or claims beyond the scope of section 303.  JTS must file its amended complaint no later than November 18, 2013 or the court will dismiss this action without further notice.  The court cautions JTS that the court will consider an award of attorney fees pursuant to 28 U.S.C. § 1927 if it uses its opportunity to amend its complaint to repeat the pleading practices that led to the Union's motion to dismiss.

DATED this 4th day of November, 2013.

*Richard A Jones*

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 10